**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Fred Eric DEJONG, Defendant—
Appellant.**

No. 00–10503.
D.C. No. CR–99–00517–MJJ.

United States Court of Appeals,
Ninth Circuit.

Submitted Feb. 5, 2002.*

Decided March 18, 2002.

Before CHOY, FERGUSON, and BOOCHEVER, Circuit Judges.

MEMORANDUM **

Fred Eric DeJong appeals the district court's application of a five-level sentence enhancement based on its finding that he engaged in money laundering involving more than $1 million but less than $2 million. *See* U.S.S.G. § 2S1.1(b)(2)(F). We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the district court's finding regarding the amount of money involved in a money laundering offense for clear error, *United States v. Golb*, 69 F.3d 1417, 1431 (9th Cir.1995), and we affirm.

DeJong and co-defendant Alexis Carles operated AC Trading Group, Inc. and AC Trading Group Fund, L.P. (collectively "AC Trading"), businesses purporting to buy and sell contracts for the future deliv-

---

* This panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a)(2).

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

ery of commodities. On December 9, 1999, a federal grand jury returned a forty-eight count indictment against DeJong and Carles, charging them with mail fraud, wire fraud, and money laundering. De-Jong pled guilty to one count of mail fraud, in violation of 18 U.S.C. § 1341, and one count of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i). At sentencing, the district court found that $1,182,504.84 that DeJong and Carles paid to investors and business associates from May 1996 through April 1997 constituted "lulling payments" designed to prevent discovery of DeJong and Carles' underlying scheme to defraud the investors. It concluded that the "lulling payments" were "relevant conduct" under U.S.S.G. § 1B1.3(a)(2), and were to be included in the "value of funds" laundered for sentencing purposes. *See* U.S.S.G. § 2S1.1(b)(2)(F).

■ DeJong first argues that the district court erred because he only pled guilty to one count of money laundering, which alleged that he laundered $6,000. He suggests that, because he did not plead guilty to laundering the more than $1 million in payments to investors and business associates, the district court could not include them in the "value of funds" laundered for sentencing purposes. However, "in the calculation of 'value of funds' laundered, the Sentencing Guidelines require rather than prohibit consideration of conduct beyond the counts on which a defendant was convicted." *United States v. Rose*, 20 F.3d 367, 371 (9th Cir.1994). Specifically, U.S.S.G. § 1B1.3(a)(2) instructs district courts to consider "relevant conduct," which is defined as acts that "were part of the same course of conduct or common scheme or plan as the offense of conviction[.]" Thus, the district court did not err. by taking into account "relevant conduct" aside from the "value of

funds" alleged in the count to which he pled guilty.

■ DeJong next argues that the Government failed to produce evidence that the more than $1 million in funds paid to investors and business associates were "lulling payments." The record belies De-Jong's argument. To begin with, the Government relied, in part, on the uncontested factual background set forth in the Presentence Report, which described AC Trading's use of payments to prevent investors from discovering the scheme to defraud. In addition, in its opposition to DeJong's requests for downward departure, the Government detailed AC Trading's use of "lulling payments," including exhibits itemizing when, to whom, and for how much each payment was made. Therefore, the Government provided ample evidence to support its position that the payments were made for "lulling" purposes.

Finally, DeJong asserts that the district court erred by characterizing the full $1,182,504.84 paid to investors and business associates as "lulling payments." To begin with, DeJong claims that the timing of some of the payments defeats the notion that they were made to lull investors' suspicions that fraud was involved. However, DeJong himself admitted that "payments were designed to prevent discovery of the scheme to defraud . . . ." Therefore, the district court correctly concluded that they were "lulling payments" since they allowed DeJong to continue to promote his scheme. DeJong also claims that the district court's finding was clearly erroneous because AC Trading began as a legitimate commodities trading business. He asserts that the fraudulent activities began after the business suffered substantial losses beginning in April 1996, and the district court should not have characterized the entire $1,182,504.84 as "lulling payments." However, even if we assume, *arguendo*, that

AC Trading did begin as a legitimate business, the payments the district court took into account in determining the "value of funds" laundered were all made after AC Trading began to suffer substantial losses, at which point it is undisputed that De-Jong and Carles had already begun to engage in fraudulent activity. As such, the district court did not commit clear error in determining that the $1,182,504.84 constituted "lulling payments" intended to convince investors that AC Trading was a profitable and legitimate business.

AFFIRMED.[1]

---

1. DeJong filed an Emergency "Motion for Release on Recognizance Pending Completion of Appeal After Service of 28 Months of Sentence" on March 1, 2002. Because we affirm DeJong's sentence, his motion is mooted.

